**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

NICHOLAS DROWATZKY,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 6:20-cv-01065-HLT-KGG
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ADT, LLC,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS AND TO DISMISS ACTION WITH PREJUDICE

Plaintiffs Nicholas Drowatzky (the "Named Plaintiff"), individually and on behalf of the class of individuals that he seeks to represent ("Class Members"), as well as Opt-In Plaintiffs Deborah Benjamin, Jalisa Brooks, Monique Henderson, Kristen Marks, Ama Moore, Ashley Ragan, LaToya Tatum and Ashley Wilson ("Opt-in Plaintiffs") and Defendant ADT LLC ("ADT") file this Joint Motion for Approval of Settlement and request that the Court approve the Parties' Collective Action Settlement Agreement and Release of Claims (the "Settlement Agreement") and dismiss this action with prejudice.

### INTRODUCTION

The Settlement Agreement encompasses the claims of a class consisting of approximately 515 hourly call center employees who worked at ADT's Wichita call center during the relevant time period. The Parties have agreed, subject to Court approval, to resolve this wage and hour matter for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation, and was the result of arm's length settlement negotiations conducted by an experienced wage and hour mediator with both parties being represented by experienced counsel well versed in wage and hour law. Accordingly, the Parties

request that the Court: (1) approve as fair, adequate and reasonable the $225,000.00 settlement set forth in the Settlement Agreement attached as Exhibit A; (2) approve the proposed Notice and Claim Form attached as Exhibits B and C to the Settlement Agreement, and the proposed method for distribution; (3) approve the specific settlement to the Named Plaintiff; (4) approve Plaintiffs' request for attorneys' fees in the amount of $90,000.00 and litigation costs and expenses actually incurred in the amount of $6,651.00; and (5) dismiss the Lawsuit with Prejudice, with the Court retaining jurisdiction and ordering the clerk to keep the case open until 15 days after the Extended Consent Deadline (as defined below) in order to allow the parties to file the Claim Forms.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**I.    Overview of Parties Involved**

This lawsuit was filed on March 5, 2020 by the Named Plaintiff, who was an hourly call center worker at ADT's Wichita call center for two months in early 2018.

The class of employees ("Class Members") who will receive notice and a claim form include approximately 515 ADT employees who were paid hourly, worked at Defendant's Wichita call center facility at some point in time between June 3, 2017 and April 22, 2018 and worked at least 40 hours for at least 1 week during that time period and held any of the following positions during that time period: Account Specialist I or II, Associate Customer Care I, II or III, Collection Representative I, Collector I, Commercial AC&T Rep I, II or III, Customer Experience QA Specialist I, Customer Ops QA Representative, Customer Service Representative I, II or III, Customer Support Representative I or II, Inside Sales Qualifier, Inside Sales Solution Specialist I, LKA Specialist, Monitoring Representative I or II, National Video AC&T Representative I, Resale and Relocation Specialist, Residential Ops Coordinator, Resolution Specialist.

## II.   Overview of Claims and Investigation

The claims resolved by the Settlement Agreement arise from alleged system issues at the Wichita call center during the relevant time period that resulted in the Class Members not being fully compensated for all overtime worked by them, primarily related to the length of time it took the Class Members to log in.[1]   Before and during the litigation, the Named Plaintiff and Class Counsel conducted a thorough investigation into the merits of the claims and defenses.   Class Counsel conducted in depth interviews with the Named Plaintiff, Opt-In Plaintiffs as well as numerous other witnesses, and reviewed extensive written materials uncovered during their investigation.

ADT produced, and Class Counsel reviewed, relevant time and pay data to determine the approximate value of the claim.

## III.   History of Settlement Negotiations

The parties engaged in extensive information exchange and settlement talks leading up to a full day private mediation with experienced FLSA mediator Anne Marie Estevez, who was engaged due to her particular expertise mediating FLSA collective actions.   Although that mediation was delayed due to COVID-19, the parties and their counsel worked together to keep their focus on trying to resolve the matter.   The parties were able to participate in a productive and successful mediation with Ms. Estevez that resulted in an agreement in principle, and the execution of a Memorandum of Understanding. After further discussions, the parties were eventually able to come to an agreement on all of the settlement terms.

---

[1] Because new technology allowed ADT to change its systems at the call center in April 2018 such that each employee was automatically clocked in the moment they logged into their computer, the relevant time period runs from June 3, 2017 to April 22, 2018.

In January 2021, the Settlement Agreement was signed by all parties.  The fully executed Settlement Agreement is attached as Exhibit A.

<strong><u>SUMMARY OF THE SETTLEMENT TERMS</u></strong>

**I.     The Maximum Settlement Amount**

The parties have agreed that the Maximum Settlement Amount will be $225,000.00.  The Maximum Settlement Amount fully resolves and settles the Lawsuit, including the claim for attorneys' fees and costs to be approved by the Court, any and all amounts to be paid to or on behalf of Class Members, all Opt-In Plaintiffs and the Named Plaintiff and the Claims Administrator's fees and costs.  Class Members must timely submit a Claim Form in order to receive a settlement payment.

**II.    Eligible Class Members**

Eligible settlement Class Members include the approximately 515 ADT employees who were paid hourly, worked at Defendant's Wichita call center facility at some point in time between June 3, 2017 and April 22, 2018 and worked at least 40 hours for at least 1 week during that time period and held any of the following positions during that time period: Account Specialist I or II, Associate Customer Care I, II or III, Collection Representative I, Collector I, Commercial AC&T Rep I, II or III, Customer Experience QA Specialist I, Customer Ops QA Representative, Customer Service Representative I, II or III, Customer Support Representative I or II, Inside Sales Qualifier, Inside Sales Solution Specialist I, LKA Specialist, Monitoring Representative I or II, National Video AC&T Representative I, Resale and Relocation Specialist, Residential Ops Coordinator, Resolution Specialist.

Within 14 days of the Court's issuance of an Approval Order, ADT will provide the Claims Administrator the following information, in electronic form, for all Opt-In Plaintiffs and Class

Members: name, social security number, last known addresses, city and state of employment for ADT, number of full weeks worked by them in which they worked over 40 hours during the time frame between June 3, 2017 and April 22, 2018 (the "Class List"). ADT will provide Class Counsel with the same list, but that list will not include the social security numbers or addresses for the Class Members. Within ten business days of receiving the Class List from ADT, the Claims Administrator will mail the proposed Notice and Claim Form to each Class Member. The proposed Notice alerts each Class Member to the terms of the settlement, their estimated individual settlement allocation, the scope of the release, and the timetable for participation.

## III.    Class Allocation Formula

The allocation to the Named Plaintiff, Class Members and Opt-in Plaintiffs will be made from the Net Settlement Amount.[2] The allocation of each Class Member's and Opt-In Plaintiff's award, which is their proportionate share of the Net Settlement Amount, will be calculated as follows. A $50.00 minimum payment will be first be allocated to each Opt-In Plaintiff and Class Member. The remaining amount of the Net Settlement Amount shall be allocated to each Opt-In Plaintiff and Class Member proportionally based on the number of weeks in which they worked over 40 hours during the time frame between June 3, 2017 and April 22, 2018. The amount of each Opt-In Plaintiff's and Class Member's settlement amount shall be referred to as their Settlement Award. A Class Member shall only receive their Settlement Award if they timely return a completed Claim Form and become a Participating Class Member. The calculation of the number of weeks in which each Class Member worked 40 hours will be based on ADT's business records.

---

[2] The Net Settlement Amount is determined by deducting the attorneys' fees and litigation expenses, the service award for Named Plaintiff, and claims administration fees from the Maximum Settlement Amount.

## IV.    Releases

Class Members who participate in the settlement by executing and returning their Claim Form ("Participating Class Members") and the Opt-In Plaintiffs will release only wage and hour claims of any type, including all FLSA claims.  Class Members who do not participate will not release any claims.  The Named Plaintiff, in exchange for his service payment, has executed a general release.

## V.    Service Payment

In return for the risk he incurred and the services he rendered to the Class Members, and including additional funds that were separately negotiated as consideration for his general release and the other terms in his individual settlement agreement, the Named Plaintiff will be paid a Service Award of $2,500.00, in addition to his proportionate share of the Net Settlement Amount.

## VI.    Settlement Claims Administration

The parties have retained JND Legal Administration to serve as the Claims Administrator. The claim administration fee of $6,181.00 will be paid out of the Maximum Settlement Amount.

## VII.    Attorneys' Fees and Litigation/Arbitration Costs

Under the terms of the Settlement Agreement, subject to Court approval, the parties agree that Class Counsel will receive $90,000.00, which represents payment of all reasonable attorneys' fees and $6,651.00, which represents payment of all costs associated with the Lawsuit.

## ARGUMENT

### I.     Standard for FLSA Settlements

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it finds that the litigation involves a bona fide dispute, and the proposed settlement is fair and equitable to all parties. *Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC, 2019 WL 5102177, at *4-5 (D. Kan. Oct. 11, 2019). The FLSA also requires the parties to include in the settlement agreement an award of reasonable attorney's fees and costs of the action. *Id.* The Court must also determine whether the plaintiff's service award is fair and reasonable. *Id*. at *14.

### II.     The Parties Had a Bona Fide Dispute

In order to determine if a bona fide dispute exists, the parties must provide the following information: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* at *8.

ADT is a nationwide security company that operated the Wichita call center during the relevant time frame for the purpose of providing telephonic customer support and support to its technicians. The dispute involves the computer systems in place at the call center during the relevant time period and whether the log in and clock in systems resulted in the hourly call center employees not being properly paid for all overtime worked as a result of slow software during the clock in process. The Named Plaintiff alleged that he was shorted a few minutes a day because of that process. ADT denied those allegations, denied that there was any uncompensated time worked

and alleged that any time spent logging in was *de minimis*. The parties agreed that this could create a potential FLSA violation only during weeks in which an employee worked over forty hours. The parties also agreed that if there was any uncompensated time and if it was not *de minimis*, it would still amount, on average, to something between zero and fifteen minutes per day. The parties also agreed to use the average rate of $14/hour for the purpose of analyzing the value of the claim. The Net Settlement Amount will allow for each Class Member's Settlement Award to be the equivalent of approximately 10 minutes per day of unpaid overtime wages.

Furthermore, there is no doubt that this settlement represents the resolution of a *bona fide* dispute, as the Agreement came only after many months of contested litigation, ongoing information exchanges and negotiations and a full day mediation with an experienced FLSA collective action mediator. The parties disputed numerous key issues in the cases: (1) whether the case was appropriate for conditional and/or class certification; (2) whether class members are similarly situated; (3) the average amount of off-the-clock time worked by the Named Plaintiff and the Class Members; (4) the proper calculation of damages; (5) the likelihood of success on the merits; (6) whether the alleged uncompensated time was *de minimis,* and (7) whether the claims of the class were barred by the statute of limitations. Although the Named Plaintiff believes his claims are well-suited for conditional certification, the arguments raised by ADT presented significant risks to certification. Both certification and merits issues were contested by both sides with equal vigor. Only after significant data analysis, negotiation, and mediation, were the parties able to reach an accord. The only possible conclusion is that this Agreement resolves a *bona fide* dispute between the Named Plaintiff and ADT.

### III.    The Settlement is Fair and Equitable

To determine whether the proposed settlement is fair and equitable, the Court considers several factors, including the following from the class action context: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable. *Id*. The Court must also find that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA. *Id.* at *11.   The Court will therefore examine other factors, including whether opt-in plaintiffs received notice of the proposed settlement and an opportunity to object, how plaintiff's counsel plans to distribute the settlement fund and how much of the settlement fund should be allocated to the Named Plaintiff as a service award.  *Id.* at 12.

As discussed in detail above, the parties fairly and honestly negotiated the proposed settlement, both during a formal mediation with Ms. Estevez, a respected wage and hour mediator, and while collaborating to draft the settlement agreement before the Court.  Likewise, there were serious questions of law and fact that placed the ultimate outcome of the litigation in doubt, including (1) whether the case was appropriate for conditional and/or class certification; (2) whether class members are similarly situated; (3) the average amount of off-the-clock time worked by the Named Plaintiff and the Class Members; (4) the proper calculation of damages; (5) the likelihood of success on the merits; (6) whether the alleged uncompensated time was *de minimis,* and (7) whether the claims of the class were barred by the statute of limitations.

In light of the above, it is also plainly evident that the value of an immediate recovery outweighs the mere possibility of future relief.  The settlement provides for a Maximum Settlement

Amount of $225,000.  As discussed above, these claims involve a small amount of time Class Members allegedly weren't paid while they were logging in to their systems and all of the time in dispute falls outside the standard two year statute of limitations on an FLSA claim, meaning that a willful violation would have to be established in order to create any potential liability to the class.[3]  Furthermore, the Net Settlement Amount, after deductions for Class Counsel's fees, and claims administration fees, and the Service Award, will still provide each Class Member with a Settlement Award equivalent to approximately 10 minutes per day.  The Agreement provides Class Members with a fair and reasonable compromise of their claims.

The parties also note that the proposed agreement does not contain overly-broad releases or restrictive confidentiality provisions, nor does it fail to provide recourse to opt-in members who do not wish to participate in proposed settlement.  The Class Members and Opt-In Plaintiffs are only releasing their wage and hour claims.  The Named Plaintiff separately negotiated and has executed a general release in exchange for his service payment of $2,500. The general release is similar to that approved by this Court in prior cases. *See Geist v. Aaron Handke d/b/a Foxpoint Trucks, LLC, et al.,* Case No. 2:17-cv-02317-HLT (D. Kan. Nov. 28, 2018) (single plaintiff FLSA settlement with general release); *Tiscareno v. Bimbo Bakeries USA, Inc.*, Case No. 5:19-cv-04058-HLT-JPO (D. Kan. Nov. 10, 2020) (collective action and class action for state law claims where the settlement agreement, which contained a general release for the named-Plaintiff, was approved via hearing and the full agreement was not filed).

Drowatzky's individual agreement does not contain a confidentiality clause.  In the class agreement, the only restrictions post filing of this motion relate to comments to the press, media or advertising, and even then, allow the parties and their counsel to refer to the Court filings.  In a

---

[3] ADT's April 2018 technology upgrade that ensured its call center employees were clocked in the moment they logged into their computer limited the applicable relevant time period in this matter.

situation such as this, where the alleged violation was cured almost three years ago and everyone affected will be receiving court-supervised notice, this limited confidentiality is reasonable and all parties consider it to be in the best interest of everyone involved.

Other FLSA settlements in this District have been approved when they contain broader general releases and/or confidentiality clauses. *See Alewel v. Dex One Service, Inc.*, Case No. 13-cv-02312-SAC-KGS (D. Kan. Feb. 7, 2014) (the settlement agreement filed as docket entry 22-1 contains a confidentiality provision and general release); *see also Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC, 2019 WL 5102177, at *7 (D. Kan. Oct. 11, 2019) (approving settlement with general release by named Plaintiff); *McGlon v. Sprint Corporation*, 2018 WL 1847035, at *5 (D. Kan. Apr. 18, 2018) (discussing underlying settlement terms when considering potential breach of confidentiality provision by class counsel who filed a subsequent collective action against the same employer).

Under these circumstances, a presumption of fairness and reasonableness attaches to the settlement and the Agreement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Finally, as indicated above, the Agreement requires that adequate notice be issued to Class Members to inform them of this proposed settlement. Specifically, Class Members will receive the best notice that is practicable under the circumstances, including individual mailed notice to

all members who can be identified through reasonable effort. Specifically, within 14 days of the Court's issuance of an Approval Order, ADT will provide the Claims Administrator the following information, in electronic form, for all Opt-In Plaintiffs and Class Members: name, social security number, last known addresses, city and state of employment for ADT, number of full weeks worked by them in which they worked over 40 hours during the time frame between June 3, 2017 and April 22, 2018 ("Class List"). The Notice, which is attached as an exhibit to the Class Settlement Agreement, will clearly and concisely state in plain, easily understood language: (i) the nature of the action, (ii) the definition of the classes certified; (iii) the class claims, issues, and defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that a class member will not be included unless they want to be included; (vi) the time and manner for requesting inclusion; and (vii) the binding effect of a class judgment on members.

## IV.    The Service Payment to Drowatzky is Fair and Reasonable

The Settlement provides for a small service payment to Drowatzky of $2,500 both to compensate him for the general release and other terms in his settlement and to compensate him for his diligence, commitment and investment—in terms of time, money and "sweat equity." He provided substantial assistance to Class Counsel, including extensive meetings and conferences and review of documents. The amount was specifically negotiated in exchange for him agreeing to the general release and other terms already discussed herein. Under these circumstances, this service payment is fair and reasonable and should be approved. *Tiscareno v. Bimbo Bakeries USA, Inc.*, Case No. 5:19-cv-04058-HLT-JPO (D. Kan. Nov. 10, 2020) (approving $2,500 service payment); *Enegren v. KC Lodge Ventures LLC*, 2019 WL 5102177, at *9 (D. Kan. 2019) (approving $5,000 service award); *Tommey v. Computer Sciences Corporation*, Case No. 11-CV-

02214-EFM, 2015 WL 11070580, at *1 (D. Kan. May 27, 2015) (approving $5,000 service payment).

## V.     The Proposed Notice of Settlement and Claim Form Should Be Approved

The Court should also approve the proposed Notice of Settlement and Claim Form, copies of which are attached as Exhibits B and C to the Settlement Agreement.  The proposed Notice sufficiently informs each Class Member of the terms of the settlement, including the allocation formula, the amount they will receive individually, the opt-in process and timetable, the scope of the release, and the attorneys' fees and costs that were approved.

## VI.    The Attorneys' Fees and Costs Are Reasonable and Should Be Approved

Additionally, the parties have agreed that Class Counsel will receive $90,000.00, or forty percent (40%) of the gross settlement funds as attorneys' fees and $6,651.00 for litigation costs, as indicated in Exhibit A. The reasonable fee is a percentage of the common fund.

### A.     Percentage of the Fund Method Is Appropriate

The preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a percentage of the common fund created by the litigation. *See Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. 29 U.S.C. § 216(b). Where a fee-shifting statute exists, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Class Counsel would receive forty percent (40%) of the Maximum Settlement Amount as attorneys' fees, and $6,651.00 as reimbursement for litigation expenses.

Where class counsel create a "common fund" both for the class and for fees, costs, and expenses, class counsel are entitled to receive their fee from the fund:

> Since [the late 19th century], this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.... The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense. Accordingly, Plaintiffs' request for attorneys' fees and costs should be approved.

*Boeing Co. v. Van Gemert*, 440 U.S. 472, 478 (1980).

The common-fund methodology applies where the claim would otherwise invoke a fee-shifting statute if the case were tried, like the FLSA does. In 1985, the United States Court of Appeals for the Third Circuit convened a Task Force that was given the express charge to develop "recommendations to provide fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine." *Court Awarded Attorney Fees*, 108 F.R.D. 237, 238 (3d Cir. Task Force, 1985). The Third Circuit Task Force specifically examined the "fee-shifting" cases and categorized them as claims where the determination of the fee "continues to be an adversary proceeding until resolution, *except when a statutory fee case is 'converted' into a fund case by settlement*." *Id.* at 255 (emphasis added). After detailed analysis of the various methods for determining attorneys' fees, "the Task Force recommends that in the traditional common-fund situation *and in those statutory fee cases that are likely to result in a settlement fund from which adequate counsel fees can be paid*, the district court ... should attempt to establish a percentage fee arrangement." *Id.* (emphasis added). Thus, under the Third Circuit Task Force's analysis, a statutory fee-shifting lodestar analysis would apply to a settlement *only* where the settlement fund is inadequate to pay the attorneys' fees, or where the amount of the fee remains adversarial. *See also Staton v. Boeing, Co.,* 327 F.3d 938, 967 (9th Cir.

2003) (fees may be awarded as a percentage of a common fund where there is a fee-shifting statute because the parties are expected to negotiate and settle the fees as an element of damages).

The Tenth Circuit has adopted the same approach:

> Fees in common fund cases are extracted from the predetermined damage recovery rather than obtained from the losing party. Thus, common fund fees are neither intrinsically punitive nor designed to further any statutory public policy. Conversely, statutory fees are intended to further a legislative purpose by punishing the non-prevailing party . . . . Thus, unlike statutory fees, which result in a *shifting* of the fee burden to the losing party, common fund fees result in a *sharing* of the fees among those benefited by the litigation.

*Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 455 (10th Cir. 1988). Consequently, "[a]fter a period of experimentation with the lodestar method the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases." Manual for Complex Lit. (4th Ed.) § 14.121.

The Tenth Circuit, like other Circuits, has expressed "a preference for the percentage of the fund method." *Gottlieb*, 43 F.3d at 483; *see also Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

The Tenth Circuit has held, "although time and labor required are appropriate considerations [in a common fund case], the results obtained may be given greater weight when, as in this case, the recovery was highly contingent and [when] the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Brown*, 838 F.2d at 456. This Court follows the Tenth Circuit's "preference for the percentage of the fund method" in class actions and granted motions for fee awards similar to that requested here. *See, e.g., Hoffman v. Poulsen Pizza*

15

*LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *9 (D. Kan. Jan. 3, 2017) ("Historically, our court has approved fee awards in FLSA cases ranging from "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars."); *Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ, 2020 WL 6318662, at *4 (D. Kan. Oct. 28, 2020) (approving a percentage of the fund of 45.4%, inclusive of fees and costs in an FLSA settlement); *McMillian v. BP Serv., LLC*, No. 19-2665-DDC-TJJ, 2020 WL 4015259, at *3 (D. Kan. July 16, 2020) (approving a fee award of 40% of the common fund as fair and reasonable in an FLSA settlement); *Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in this context.")

The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d. Cir. 2005) (emphasis added) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y. Nov. 26)). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

**B. The requested fee is reasonable under *Johnson*.**

In evaluating the reasonableness of a fee request, both the Tenth Circuit and this Court have looked at the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Brown*, 838 F.2d at 454-55; *Bank of Am.*, 2013 WL 6670602, at *3. Rarely are all these factors relevant, particularly in a common fund situation, and the trial court has the discretion to determine which factors to weigh most heavily. *Brown*, 838 F.2d at 456. Applying these factors here confirms the reasonableness of the requested 40% of the fund.

> 1.    *Johnson Factors (2), (3), (9), & (10): the novelty and difficulty of the questions presented; the skill, experience, reputation, and ability of the attorneys; and the "undesirability" of the case.*

"FLSA claims involve complex mixed questions of fact and law, and issues must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). This case was further complicated by the fact that no claims within the automatic two-year statute of limitations existed—Plaintiff would necessarily have to prove a willful violation of the FLSA to be entitled to *any* recovery. Likewise, many wage

and hour practitioners would refuse to litigate a case with only third-year claims, further highlighting the undesirability of the case.

Moreover, Class Counsel have extensive experience in wage and hour litigation. (Declaration of Clif Alexander, ¶¶ 14, attached as Exhibit B). The attorneys at Anderson Alexander, PLLC have handled over forty (40) lawsuits against call centers across the nation, representing over 100,000 call center employees. Indeed, Class Counsel are specialized not only in complex collective and class action litigation in the wage and hour context, they are highly experienced in litigating against call centers. *See id.* In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of the attorneys, and the "undesirability" of the case, *Johnson* factors (2), (3), (9) and (10) all strongly support the requested fee.

2. *Johnson Factors (5), (6), & (8): the contingent nature of the fee, and the amount involved and results obtained*

When determining the fee award in a common fund case, the most important factors are the contingent nature of class counsel's fee, and "the amount involved and the results obtained." *Brown* 838 F.2d at 456 ("a decisive factor in this common fund class action case is the amount involved and the results obtained"). All wage and hour actions pose significant risk to attorneys representing plaintiffs, who incur great time and expense liabilities that may yield no return at all. *See Guyton v. Tyson Foods, Inc.*, Case No. 07-cv- 00088 (S.D. Ia. Apr. 26, 2012) (complete jury verdict for defendant in donning and doffing case); *Lopez v. Tyson Foods, Inc.*, Case No. 06-cv-459 (D. Neb. May 26, 2011) (same).

Here, Class Counsel undertook representation on a contingency fee agreement. Indeed, Class Counsel bore all risk of loss in this litigation, not only for time and costs expended while

working on the case, but also the risk of responsibility for ADT's statutory court costs, had ADT prevailed during trial on the merits. *See* Exhibit B, ¶ 16.

After filing this case and learning that ADT had changed its log-in process in April 2018, it became clear that the only individuals with claims in the third year were able to recover. Because the FLSA requires the plaintiff to prove that the defendant willfully violated the FLSA, Plaintiff understood that prevailing on the merits would be difficult. *See* 29 U.S.C. § 255(a). Despite the significant hurdles to recovery, Class Counsel negotiated a settlement that would provide all Class Members with compensation for ten (10) minutes a day for their log-in time. This recovery fully compensates the Class Members for their wage and hour claims and constitutes an exceptional result for their third-year claims.

        3.     *Johnson Factors (1)&(4):Time and Labor Expended and Preclusion of Other Work*

The Tenth Circuit has de-emphasized the time and labor component of the *Johnson* factors in common fund cases, and even when considered it "need not be evaluated using the lodestar formulation." *Brown* 838 F.2d at 456. Here, despite the relatively quick resolution of this case, Class Counsel spent significant time litigating this case with no assurance of any recovery at all. *See* Exhibit B, ¶¶ 14, 16. This includes time spent investigating the facts; researching venue and jurisdiction issues; conferring extensively with clients, reviewing documents produced by their clients and ADT; analyzing ADT's payroll and time-keeping data; preparing for mediation; computerized damage models, negotiating the terms of the settlement and the approval papers; and creating and devising a formula for allocation of the common fund for the class. *See id.* This work necessarily precluded Counsel from pursuing other litigation opportunities.

In light of Class Counsel's time in this case—as well as the additional time required going forward—Class Counsel's request for attorneys' fees is reasonable and should be approved.

4.    *Johnson Factor (12): Awards in Similar Cases*

Fee awards of 40% of the common fund are common in FLSA cases. *See, e.g., Hoffman*, 2017 WL 25386, at *9 (recognizing that fee awards in this Court have ranged from "four per cent to 58 per cent of the common fund"); *Flerlage*, 2020 WL 6318662, at *4 (approving a percentage of the fund of 45.4%, inclusive of fees and costs in an FLSA settlement); *McMillian*, 2020 WL 4015259, at *3 (approving a fee award of 40% of the common fund as fair and reasonable in an FLSA settlement); *Enegren*, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in this context.").

Because the 40% of the common fund requested by Class Counsel is common in FLSA cases in this District, Class Counsel's request for attorneys' fees is reasonable and should be approved.

## **CONCLUSION**

The Settlement is reasonable and fair in all respects, particularly considering that at all times this litigation was vigorously contested.  Accordingly, the Parties respectfully request the Court approve the settlement.

**WHEREFORE,** the Parties respectfully request this Court enter an Order (1) approving the Settlement Agreement; (2) dismissing the Lawsuit with prejudice; (3) awarding Class Counsel their requested fees and costs; (4) approving the Notice of Settlement and Claim Form to be sent to the Class Members; (5) retaining jurisdiction and ordering the clerk to keep the case open until 15 days after the Extended Consent Deadline in order to allow the parties to file the Claim Forms; and (6) awarding such other and further relief as this Court deems just and proper.

Date: February 11, 2021                    Respectfully submitted,

**PAUL LLP**                               **FISHER & PHILLIPS LLP**

*s/ Richard M. Paul*                       *s/ Gregory D. Ballew*
Richard M. Paul, III (KS #17778)           Gregory D. Ballew KS Bar No. 17214
Laura C. Fellows (KS # 26201)              4900 Main Street, Suite 650
601 Walnut Street, Suite 300               Kansas City, Missouri 64112
Kansas City, MO 64106                       TEL: (816) 842-8770
816-984-8100                               FAX: (816) 842-8767
Fax: 816-984-8101                          Email: gballew@fisherphillips.com
Rick@PaulLLP.com
Laura@PaulLLP.com

                                           and
and
                                           Steven A. Siegel (*pro hac vice*)
**ANDERSON ALEXANDER, PLLC**               450 East Las Olas Boulevard, Suite 800
                                           Fort Lauderdale, FL 33301
s/ Clifton Alexander                       TEL: (954) 847-4724
Austin W. Anderson (*pro hac vice*)        FAX: (954) 525-8739
William Clifton Anderson (*pro hac vice*)  Email: ssiegel@fisherphillips.com
819 North Upper Broadway
Corpus Christi, TX 78401                    **ATTORNEYS FOR DEFENDANT**
361-452-1279
Fax: 361-452-1284
austin@a2xlaw.com
clif@a2xlaw.com

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Kansas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                           */s/ Richard M. Paul*